UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD MONROE,

                Plaintiff,

v.                                5:15-CV-1235
                                (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                        OF COUNSEL:

OLINKSY LAW GROUP            HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.      VERNON NORWOOD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 12.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Richard Monroe

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 10, 11.)  For the reasons set forth

below, it is recommended that Plaintiff's motion be granted in part and denied in part,

and Defendant's motion be granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Procedural History

On October 1, 2012, Plaintiff applied for a period of Disability Insurance Benefits

("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the

Social Security Act.  (T. 106.)  Plaintiff's application was initially denied, after which he

timely requested a hearing before an Administrative Law Judge ("the ALJ"). On

February 25, 2014, Plaintiff appeared before the ALJ, Bruce S. Fein.  (T. 23-59.)  On

July 16, 2014, ALJ Fein issued a written decision finding Plaintiff not disabled under the

Social Security Act.  (T. 5-22.)  On August 19, 2015, the Appeals Council ("AC") denied

Plaintiff's request for review, rendering the ALJ's decision the final decision of the

Commissioner.  (T. 1-3.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### B.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 10-18.)  First, the ALJ found that Plaintiff met the insured status

requirements through March 31, 2017 and Plaintiff had not engaged in substantial

gainful activity since February 1, 2012.  (T. 10.)  Second, the ALJ found that Plaintiff had

the severe impairment of lumbar disc degeneration with radiculopathy.  (*Id.*)  Third, the

ALJ found that Plaintiff did not have an impairment that meets or medically equals one

of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 14.)

Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

perform light work. (*Id.*)[1]  The ALJ specifically found that Plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours and stand/walk for six hours in an eight hour workday, with normal breaks; engage in all postural activities occasionally, but could not climb ropes, ladders, or scaffolds.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 16-17.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ abused his discretion in failing to order a consultative examination to assess and clarify the extent of Plaintiff's intellectual impairment.  (Dkt. No. 10 at 8-12 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the RFC determination was not supported by substantial evidence.  (*Id.* at 12-15.)  Third, Plaintiff argues that the credibility determination was not supported by substantial evidence.  (*Id.* at 15-17.)  Fourth, and lastly, Plaintiff argues that the ALJ erred at step five because he failed to consult a vocational expert ("VE").  (*Id.* at 17-19.)

### B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues that a consultative intelligence examination was not warranted.  (Dkt. No. 11 at 6-10 [Def.'s

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Mem. of Law].)  Second, Defendant argues that the ALJ correctly assessed Plaintiff's RFC.  (*Id.* at 10-12.)  Third, Defendant argues that the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 12-14.)  Fourth, and lastly, Defendant argues that the ALJ was not required to consult a VE.  (*Id.* at 14-16.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.  ANALYSIS

### A.  Duty to Order a Consultative Examination

A consultative examination is used to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. *Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x 29, 32 (2d Cir. 2013) (citing 20 C.F.R. §§ 404.1519a(b), 416.919a(b)).

The ALJ has discretion to order a consultative examination to further develop the evidentiary record. *See Serianni v. Astrue,* No. 6:07-CV-250, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010) (citing *Hughes v. Apfel,* 992 F.Supp. 243, 248 (W.D.N.Y.1997); *see* 20 C.F.R. §§ 404.1517, 416.917). "Several courts have held ... that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision." *Serianni*, 2010 WL 786305 at *5.

However, the ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it. *Tankisi*, 521 F.App'x at 32; *see also Lefever v. Astrue,* 5:07-CV-622, 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd* 443 Fed.Appx. 608 (2d Cir. 2011).

In addition, "[w]here a plaintiff suggests a possible mental impairment, but no treatment has been recommended or received, the ALJ must assess whether there is any evidence of work-related functional limitations resulting from the possible mental impairment." *Serianni*, 2010 WL 786305, at *5 (citing *Haskins v. Comm'r of Soc. Sec.,* No. 5:05-CV-292, 2008 WL 5113781, at *7, n. 5 (N.D.N.Y. Nov. 25, 2008)).

Plaintiff argues that the ALJ "abused his discretion in failing to order a consultative examination to assess and clarify the extent of [Plaintiff's] intellectual impairment." (Dkt. No. 10 at 8-12 [Pl.'s Mem. of Law].)  Plaintiff's argument focuses on the need for further testing to evaluate Plaintiff's ability in reading, math, and general intellectual abilities.  (*Id.*)

Here, the ALJ concluded that despite Plaintiff's alleged illiteracy, the record failed to indicate that his illiteracy caused more than a minimally adverse effect on his ability to work.  (T. 13.)  The ALJ further noted that Plaintiff graduated high school in special education (T. 13) and testified that he could not read or write very well (T. 15); however, the ALJ concluded that Plaintiff was able to work at a substantial gainful activity level for many years, which called into question his allegation of a severe intellectual impairment (T. 8).

Dennis Noia, Ph.D. conducted a consultative psychiatric examination on November 19, 2012.  (T. 282-285.)  Dr. Noia observed that Plaintiff's speech was intelligible and fluent and his expressive and receptive language was "moderately adequate."  (T. 283.)  Dr. Noia observed that Plaintiff's thought processes were coherent, and goal directed, with no evidence of disordered thinking.  (*Id.*)  He noted Plaintiff was able to do counting and some simple calculations, but could not do serial 3s because of weak arithmetic skills.  (T. 284.)  Dr. Noia stated that Plaintiff's intellectual functioning was estimated to be in the borderline range and his general fund of knowledge appeared to be somewhat limited.  (*Id.*)

In a medical source statement Dr. Noia opined that Plaintiff appeared capable of: understanding and following simple instructions and directions; performing simple and

some complex tasks with supervision and independently; maintaining attention and concentration for tasks; attending to a routine and maintaining a schedule; learning new tasks; making appropriate decisions; relating to and interacting moderately well with others; and dealing with stress.  (T. 284.)

Courts have found that an ALJ had sufficient information, and did not abuse his discretion in deciding not to order a consultative examination to assess Plaintiff's intelligence, where Plaintiff graduated high school in general education classes, was employed, and was described by providers as being of average intelligence and having average intellect.  *Cox v. Astrue*, 993 F. Supp. 2d 169, 178 (N.D.N.Y. 2012); *see also Miller v. Colvin*, No. 6:15-CV-0552, 2016 WL 4402035, at *6 (N.D.N.Y. Aug. 18, 2016) (ALJ did not err in declining to order a consultative exam where there was substantial evidence that plaintiff did not suffer work related functional limitations); *Krach v. Comm'r of Soc. Sec.,* No. 3:13-CV-1089, 2014 WL 5290368, at *9 (N.D.N.Y. Oct. 15, 2014) (ALJ had sufficient information and a consultative examination was not necessary where the ALJ was aware of plaintiff's education level, need for resource room help during her secondary education for math and reading, struggles with writing, and her alleged difficulty in understanding through reading); *Simon v. Colvin*, No. 6:12-CV-6381, 2013 WL 4094612, at *7 (W.D.N.Y. Aug. 13, 2013) (ALJ did not err in failing to order consultative examination where the record was complete with notes from plaintiff's treating providers including therapy sessions and psychiatric evaluations).

Courts have also held that an ALJ did not abuse his discretion in failing to order additional intellectual testing where a consultative examiner noted that although plaintiff appeared to be in the borderline to low average range of intelligence, the examiner went

on to opine that the plaintiff was capable of performing the basic demands of unskilled work. *Washington v. Astrue*, No. 5:12-CV-39, 2012 WL 6044877, at *3 (N.D.N.Y. Dec. 5, 2012); *see also Slater v. Comm'r of Soc. Sec.*, No. 5:14-CV-255, 2015 WL 6157396, at *4 (N.D.N.Y. Oct. 20, 2015).

However, Courts have remanded for intellectual testing where the record did not contain objective testing, plaintiff had significant educational difficulties (only completing the sixth grade), never held employment, and was unable to perform tasks such as learning to drive or manage finances. *Wallace v. Colvin*, 120 F. Supp. 3d 300, 305 (W.D.N.Y. 2015); *see also Jarvis v. Colvin*, No. 6:15-CV-1016, 2016 WL 4148352, at *5 (N.D.N.Y. Aug. 4, 2016) (ALJ failed to discuss plaintiff's cognitive functioning at all in the RFC determination, despite AC remand ordering ALJ to do so); *Dufresne v. Astrue*, No. 5:12-CV-00049, 2013 WL 1296376, at *1 (N.D.N.Y. Mar. 8, 2013), *report and recommendation adopted*, No. 5:12-CV-0049, 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013) (ALJ failed to develop record by failing to order intelligence evaluation where record contained evidence of plaintiff's limited intellectual functioning, including plaintiff's failure to graduate from high school or obtain GED, and opinion of consultative examiner that plaintiff suffered from cognitive delays and estimating his intelligence to be in the deficient range); *Laveck v. Astrue*, 2012 WL 4491110, *6 (N.D.N.Y. 2012) (ALJ failed to develop record by not ordering an intelligence exam where ALJ failed to discuss plaintiff's learning disability, plaintiff testified that she had poor school performance and consultative psychiatric exam suggested low average cognitive functioning).

Here, the ALJ did not abuse his discretion in failing to order a consultative examination to assess and clarify the extent of Plaintiff's intellectual impairment, because the record contained sufficient information for the ALJ to make a determination. As an initial matter, the ALJ discussed Plaintiff's alleged intellectual impairment throughout his decision. At step two, the ALJ determined that Plaintiff's mental impairments were non-severe. (T. 13.) The ALJ further discussed Plaintiff's intellectual impairments in formulating his RFC determination. (T. 15-16.)

The ALJ was aware of Plaintiff's education level and his alleged difficulty in reading and math. (T. 12-13, 15-16.) The record contained education records indicating that Plaintiff graduated high school with an Individualized Education Program ("IEP") diploma. (T. 242.) School records further indicated that Plaintiff was able to understand and follow simple oral directions, was able to express simple ideas orally, and could express ideas on paper, but did not use correct grammar, syntax, or punctuation. (T. 243.) At the chronological age of 20 Plaintiff was in the 12th grade and reading at a "4B" level. (*Id.*) Plaintiff was estimated to be in the "low average" intellectual functioning range. (T. 244.)

Dr. Noia opined that although Plaintiff's cognitive functioning appeared to be in the "borderline range" and he had "weak arithmetic skills," he was capable of performing the basic demands of unskilled work. (T. 284-285); *see Washington,* 2012 WL 6044877, at *3 (consultative intelligence exam was unnecessary because the consultative examiner opined that although plaintiff had borderline to low average intellectual functioning he was capable of performing unskilled work); *see also Slater*, 2015 WL 6157396, at *4. Further, as noted by the ALJ, Plaintiff worked successfully for

years despite his alleged intellectual impairments.  (T. 8); *see Haskins v. Comm'r of Soc. Sec.,* No. 5:05-CV-292, 2008 WL 5113781, at *7 n.5 (N.D.N.Y. Nov. 25, 2008) (the ALJ committed no error when he did not pursue a consultative evaluation because the evidence did not suggest work-related functional limitations stemming from any mental impairment).  Indeed, Plaintiff informed Dr. Noia that he stopped working due to "medical problems," not his intellectual impairments.  (T. 282.)

Therefore, the ALJ did not abuse his discretion in not ordering a consultative examination to evaluate Plaintiff's intelligence because the record was sufficiently complete for the ALJ to make a determination.  The record contained Plaintiff's educational records indicating he graduated high school with an IEP diploma, the record contained Plaintiff's work history indicating that despite his alleged intellectual limitations Plaintiff was able to maintain substantial gainful employment, and the record contained a consultative examination which indicated that despite Plaintiff's borderline intellectual functioning he was capable of performing the basic mental demands of unskilled work.

In the alternative, even assuming Plaintiff was illiterate as he alleges, illiteracy would not necessarily preclude him from performing the demands of unskilled work. The Regulations define illiteracy as an "inability to read or write" and "someone [is] illiterate if [he] cannot read or write a simple message such as instructions or inventory lists even though [he] can sign [his] name. Generally, an illiterate person has had little or no formal schooling."  20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1).

Plaintiff argues that "[i]t is reasonable to assume that even unskilled work at the sedentary or light level would generally require more mental-based skills than heavier labor-driven jobs, such as basic reading, writing, and math skills."  (Dkt. No. 10 at 10

[Pl.'s Mem. of Law].)  However, the Regulations state that illiteracy would not preclude

someone with Plaintiff's age from performing light or sedentary work.  The Medical-

Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2

(commonly called "the Grids") state:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, *literacy or ability to communicate in English has the least significance.* Similarly, the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.

20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 202.00(g) (emphasis added).

For sedentary work, the Regulations state:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, *literacy or ability to communicate in English has the least significance.* Similarly the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. Thus, *the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English.*

20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 201.00(i) (emphasis added).

Therefore, contrary to Plaintiff's argument, the Regulations indicate that even if

illiterate, there would still be a substantial number of jobs that Plaintiff could perform at

the full range of light and sedentary positions.

### B.    The ALJ's RFC Determination

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Further, a plaintiff's RFC is his maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the plaintiff's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009). In determining a plaintiff's RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Here, the ALJ afforded "great evidentiary weight" to the medical opinion of the consultative examiner, Kalyani Ganesh, M.D. (T. 14.) The ALJ reasoned that Dr. Ganesh's opinion was entitled to great weight because she examined Plaintiff and was familiar with the rules governing Social Security disability adjudication. (*Id.*)

On November 19, 2012, Dr. Ganesh examined Plaintiff and provided a medical source statement. (T. 286-288.) On examination Dr. Ganesh observed that Plaintiff was in no acute distress, had a normal gait and stance, could not walk on heels and toes, could not squat, used no assistive devices, and was able to change and get on

and off the exam table without assistance. (T. 287.) Dr. Ganesh noted full range of motion in Plaintiff's cervical, thoracic, and lumbar spine. (*Id.*) Dr. Ganesh noted full range of motion in Plaintiff's upper and lower extremities. (*Id.*) She observed that Plaintiff's joints were stable, non-tender, with no redness, heat, swelling or effusion. (T. 288.) Dr. Ganesh noted trace edema in Plaintiff's extremities. (*Id.*)

In a medical source statement Dr. Ganesh opined that Plaintiff had "no gross physical limitations noted to sitting, standing, and the use of upper extremities. Mild limitation to walking and climbing." (T. 288.)

Plaintiff argues that Dr. Ganesh's opinion was too vague to constitute substantial evidence and was not consistent with other evidence in the record concerning his leg edema and low back impairment. (Dkt. No. 10 at 12-15 [Pl.'s Mem. of Law].) Plaintiff further argues that the ALJ's RFC is not supported by substantial evidence because the ALJ's decision failed to provide a "bridge" between the medical evidence in the record and his ultimate RFC determination. (*Id.*)

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010); *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015); *Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

A consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate," without additional information, does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work.  *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds; see Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (consultative examiner's opinion was "remarkably vague" and meaning was left to the ALJ's "sheer speculation"); *see Carrube v. Astrue,* No. 3:08-CV-0830, 2009 WL 6527504, at *8 (N.D.N.Y. Dec. 2, 2009) (remanding where consultative examiner's opinion on plaintiff's ability to lift weight, was so vague that the court "cannot fathom what might support the ALJ's conclusion that Plaintiff could lift and carry twenty-five to fifty pounds"), *report and recommendation adopted by,* 2010 WL 2178499 (N.D.N.Y. May 28, 2010).

Although a consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all situations.  *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014) ("[W]hether an [ALJ's] reliance on a consultative examiner's vague opinion is reversible error is contextual rather than *per se*.  Reviewing courts must weigh the impact of vague opinion in its unique factual circumstance.").

Courts have held that terms such as "mild" and "moderate" pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec.21, 2003); *Walker v. Astrue,* No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (finding that where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even

without a physician's assessment); *see Tolhurst v. Comm'r of Soc. Sec.*, No. 5:15-CV-0428, 2016 WL 2347910, at *5 (N.D.N.Y. May 4, 2016) (holding that a consultative examiner's opinion was too vague to support a finding that plaintiff could perform sedentary work because the ALJ determined, at step two, that plaintiff suffered from back disorders, knee disorders, and Factor V Leiden; and therefore, plaintiff did not have relatively little physical impairments).

Further, courts have held that a consultative examiner's conclusion was not impermissibly vague where the conclusion was "well supported by his extensive examination." *Waldau*, 2012 WL 6681262, at *4; *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014). Courts have also held that medical source statements from consultative examiners which provide vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record. *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a more concrete meaning"); *see Sweeting v. Colvin,* No. 12-CV-0917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as consultative examiner made specific findings based on physical examination of plaintiff); *Melton v. Colvin*, No. 13-CV-6188, 2014 WL 1686827, at *13 (W.D.N.Y. Apr. 29, 2014) (substantial evidence supported ALJ's RFC determination that plaintiff could perform sedentary work where consultative examiner opined plaintiff had moderate limitations in lifting and carrying and other objective evidence in the record to supported this determination).

Although the Second Circuit has made it clear that the opinions of State agency medical consultants, such as Dr. Ganesh, may constitute substantial evidence to support an ALJ's RFC determination, the opinion of such examiner must still be supported by substantial evidence in the record. *See Diaz v. Shalala,* 59 F.3d 307, 313 n. 5 (2d Cir. 1995) ("[T]he opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record."); *see also Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016) (the ALJ properly accorded great weight to consultative examiner's opinion because it was consistent with the evidence in the record).

In *Heagney-O'Hara*, the Second Circuit concluded that the ALJ's RFC determination was supported by the opinion of the consultative examiner because the opinion was consistent with the objective medical record. *Heagney-O'Hara,* 646 Fed.Appx. at 126. In *Monette*, the Court stated that the ALJ properly relied on the opinion of a consultative examiner because the opinion was "consistent with the record at large and the applicable regulations." *Monette,* 2016 WL 3639510, at *2. In *Snyder,* the Court held that "the consulting psychologist opinion was consistent with other medical evidence and was supported by substantial evidence" and therefore constituted substantial evidence to support the ALJ's RFC determination. *Snyder,* 2016 WL 3570107, at *1.

Here, the ALJ afforded Dr. Ganesh's opinion "great evidentiary weight" because the doctor examined Plaintiff and was familiar with Social Security rules. (T. 14.) The ALJ's decision failed to indicate which evidence in the record supported Dr. Ganesh's opinion besides her own examination. In addition, as outlined below, evidence in the

record conflicted with Dr. Ganesh's examination which the ALJ failed to address and resolve.

The Court does not require a recitation of each and every factor in the Regulation where the ALJ's reasoning and adherence to the regulation are clear; however, a terse analysis of an opinion, especially one upon which the ALJ primarily based his RFC determination, prevents meaningful review. *See Woytowicz v. Comm'r of Soc. Sec.,* No. 5:15-CV-0906, 2016 WL 6427787, at *6 (N.D.N.Y. Oct. 5, 2016), *report and recommendation adopted,* No. 5:15-CV-0906, 2016 WL 6426385 (N.D.N.Y. Oct. 28, 2016) (citation omitted).

In addition, there were conflicts in the record which the ALJ failed to resolve. Dr. Ganesh examined Plaintiff in 2012; however, subsequent treatment notations and objective medical imaging conflict with Dr. Ganesh's examination and findings. For example, notations from June 2013 indicated Plaintiff was in "moderate distress," used a cane, had a moderately antalgic gait, and limited range of motion in his spine. (T. 329.) Notations from September of 2013 indicated Plaintiff was in "mild distress," utilized a cane, and had limited range of motion in his spine. (T. 321.) In January of 2014, Plaintiff appeared in "mild distress," used a cane, had a moderately antalgic gait, and had limited range of motion in his spine. (T. 352.) In addition, an MRI conducted in August of 2013, revealed "moderate to marked" facet degenerative changes at multiple levels with early disc bulge resulting in foraminal narrowing and "significant" canal stenosis at multiple levels. (T. 317.) Although the ALJ noted these findings in his

decision (T. 12)[2], he failed to resolve the conflicts between these findings and Dr. Ganesh's findings.

In sum, consultative examiner Dr. Ganesh's opinion may constitute substantial evidence if his opinion was supported by the record; however, the ALJ's conclusory analysis of the doctor's opinion was not made in accordance with the Regulations and the ALJ failed to resolve inconsistencies in the record, thus preventing meaningful review. Further, a review of the record as a whole appears to indicate that Plaintiff's impairments, specifically his back impairment, may have become more symptomatic after Dr. Ganesh's examination. Under the Regulations a consultative examiner is not required to review a plaintiff's medical record. 20 C.F.R. § 404.1519n. However, because the consultative examination in this case occurred prior to Plaintiff undergoing objective medical imaging and treatment, it may be prudent on remand to request a treating source statement and/or a new consultative examination[3]. Therefore, remand is recommended for a proper analysis of the medical opinion evidence in the record.

## C.    The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's]

---

[2]    Of note, elsewhere in his determination the ALJ refers to the findings of the lumbar MRI as "benign." (T. 15.) However, the MRI report stated Plaintiff had "moderate to marked" degenerative changes at multiple levels and "significant" canal stenosis. (T. 317-318.) The ALJ's decision failed to clarify how findings of "moderate to marked" and "significant" translate to "benign."

[3]    The record contained a medical source statement dated January 23, 2013, completed by Plaintiff's treating nurse practitioner and signed by a physician in the same practice. (T. 347-349.) The ALJ afforded the statement no weight. (T.15.) Plaintiff did not argue that the ALJ erred in his assessment of this statement. (Dkt. No.10 [Pl.'s Mem. of Law].)

subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of his symptoms were not credible. (T. 16.) The ALJ stated "[t]he medical evidence simply does not contain findings establishing the presence of impairments that could cause the reported symptoms at the severity reported." (*Id.*) The ALJ further stated that Plaintiff's statements were not supported because his treatment was conservative in nature, and he refused injections and physical therapy. (*Id.*)

Plaintiff argues that the ALJ erred in his credibility determination based on Plaintiff's conservative treatment because the ALJ failed to consider the reasons for this type of treatment, such as lack of insurance. (Dkt. No. 10 at 15-16 [Pl.'s Mem. of Law].) Plaintiff further argues that the ALJ's credibility determination was flawed because the ALJ erred in his evaluation of the medical opinion evidence in the record. (*Id.* at 17.)

Because remand is recommended for an evaluation of the medical opinion evidence in the record, remand is also recommended for a new credibility analysis based on that evaluation.

D. **The ALJ's Step Five Determination**

Plaintiff argues that the ALJ erred in his step five determination because he failed to seek testimony from a VE and instead relied on the Grids. (Dkt. No. 10 at 17-19 [Pl.'s Mem. of Law].) Because remand is recommended for a proper analysis of the medical opinion evidence in the record, remand is therefore recommended for step five determination based on that review.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        December 29, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge